UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAMIAN VASQUEZ,

       Plaintiff,                                      Hon. Gordon J. Quist

v.                                                        Case No. 1:13-CV-719

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security

case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 15 years of age on his alleged disability onset date and 20 years of age on the date of the ALJ's decision. (Tr. 23-24, 109-12). He successfully completed high school and has no past relevant work experience. (Tr. 23). Plaintiff applied for benefits on February 1, 2010, alleging that he had been disabled since January 1, 2007, due to anxiety, depression, and mood swings. (Tr. 109-12, 127). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 60-108). On October 19, 2011, Plaintiff appeared before ALJ Donna Grit with testimony being offered by Plaintiff and a vocational expert. (Tr. 30-57). In a written decision dated December 28, 2011, the ALJ determined that Plaintiff was not disabled. (Tr. 15-24). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-6). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## RELEVANT MEDICAL HISTORY

On January 18, 2010, Dr. Paul Dibble performed "a complete physical" of Plaintiff and determined that "there was nothing that would limit [Plaintiff's] ability to work." (Tr. 192).

On March 5, 2010, Plaintiff completed a report regarding his activities. (Tr. 135-42). Plaintiff reported that he prepares meals daily, washes dishes, sweeps, mows the lawn, and shovels snow. (Tr. 137). Plaintiff also reported that he enjoys bowling, roller skating, reading and watching television. (Tr. 139). Plaintiff reported that his medications "help me stay more calm and focused." (Tr. 139). Plaintiff also reported that he gets along "good" with authority figures and is "usually

pretty good" at following written instructions. (Tr. 140-41). On March 6, 2010, Plaintiff's grandmother completed a similar report providing almost identical responses. (Tr. 143-50).

On May 17, 2010, Plaintiff participated in a consultive examination conducted by Robert Baird, Ph.D. (Tr. 195-99). Plaintiff reported that he was unable to work due to "anxiety and depression." (Tr. 195). When "asked to elaborate," Plaintiff reported that he "get[s] real nervous in crowds" and has "low self esteem." (Tr. 195). With respect to Plaintiff's activities, Dr. Baird reported the following:

> PAST AND PRESENT INTERESTS:
> Past and present interest and hobbies were explored with this claimant. Claimant reports that he goes and works out in a gym once to twice per week. He goes at either 9:00 or 11:00 AM. He reports that the gym has fewer people at that time. When asked about his anxiety, he comments, "I can control it because I focus on my workout and I don't pay attention to everyone else."
>
> ACTIVITIES:
> Routine daily activities were explored with this claimant. Claimant reports his daily routine begins at 11:00 AM. He will "take a shower, eat some breakfast, get on the computer or go to the gym or shoot some hoops. Go to my uncle's house or something like that." Claimant reports that his grandmother attends to all food shopping and meal preparation. He assists with household chores.

(Tr. 196).

The results of a mental status examination were unremarkable. (Tr. 197-98). Plaintiff was diagnosed with dysthymic disorder, social anxiety disorder with panic features, and generalized anxiety disorder. (Tr. 198). (Tr. 198). Dr. Baird concluded as follows:

> Good prognosis. Efficacy of Claimant's current medication should be evaluated and monitored by the prescribing physician. It appears the claimant has been capable of working out at a public gym once to twice per week. . .as long as he maintains focus on his workout. During his workouts, he does not appear to struggle with debilitating

>  social anxiety. Continued counseling can help this claimant manifest
> similar skill set for use in an employment setting.

(Tr. 198).

On May 25, 2010, Michael McCarthy, Ed.D. completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations. (Tr. 202-15). Determining that Plaintiff suffered from dysthymic disorder, social anxiety, and generalized anxiety, McCarthy concluded that Plaintiff satisfied the Part A criteria for Section 12.04 (Affective Disorders) and Section 12.06 (Anxiety-Related Disorders) of the Listing of Impairments. (Tr. 203-12). The doctor determined, however, that Plaintiff failed to satisfy any of the Part B criteria for these particular Listings. (Tr. 213). Specifically, the doctor concluded that Plaintiff experienced mild restrictions in the activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and never experienced extended episodes of decompensation. (Tr. 213).

Dr. McCarthy also completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (Tr. 216-18). Plaintiff's abilities were characterized as "moderately limited" in five categories. (Tr. 216-17). With respect to the remaining 15 categories, however, the doctor reported that Plaintiff was "not significantly limited." (Tr. 216-17).

On June 29, 2010, Dr. Elbin Orellana authored the following note:

> Damian L. Vasquez has a history of social anxiety and panic attacks.
> He had a difficult time being in the classroom. He is not able to do
> well in public or social situations. He becomes frustrated easily and
> becomes depressed and suicidal. He has climbed to the roof at his

> grandmother's house. It is anticipated that his condition will not get
> well in the next 12 months.

(Tr. 224).

Treatment notes dated July 15, 2010, indicate that Plaintiff recently forgot to take his medication on several occasions. (Tr. 267). Treatment notes dated August 12, 2010, indicate that Plaintiff was again taking his medication "regularly" and was feeling "better." (Tr. 266). Plaintiff also reported that he was considering attending college in the fall. (Tr. 266).

On July 24, 2010, Vicki Smeby, MA, LLP, LLC reported the following:

> I do not expect change i[n] Damian's condition and I do expect he
> will experience his symptoms of anxiety and depression even on his
> prescribed medications beyond the next 12 months. I do not believe
> that Damian is capable of full-time work and I do believe that this
> disability is expected to last beyond the next 12 months.

(Tr. 235).

Smeby also completed a questionnaire regarding Plaintiff's ability to function. (Tr. 226-33). Smeby rated Plaintiff's ability to function in 20 separate categories encompassing understanding and memory, sustained concentration and persistence, social interactions, and adaptation. (Tr. 229-31). Smeby reported that Plaintiff's ability was "markedly limited"[1] in 12 categories, "moderately limited"[2] in three categories, "mildly limited"[3] in one category, and exhibited "no evidence of limitation" four categories. (Tr. 229-31). Smeby further reported that Plaintiff was

---

[1] The form in question defined "markedly limited" as "effectively precludes the individual from performing the activity in a meaningful manner." (Tr. 228).

[2] The form in question defined "moderately limited" as "significantly affects but does not totally preclude the individual's ability to perform the activity." (Tr. 228).

[3] The form in question defined "mildly limited" as "does not significantly affect the individual's ability to perform the activity." (Tr. 228).

"incapable of even low stress" work and was "likely to be absent from work...more than three times a month" due to his impairments. (Tr. 232-33).

Treatment notes dated September 13, 2010, indicate that Plaintiff was "off meds 4 days straight" after which he experienced a loss in motivation. (Tr. 265). It was further reported, however, that once Plaintiff resumed taking his medications he felt "better." (Tr. 265). Treatment notes dated October 13, 2010 indicate that Plaintiff was feeling better and participating in kick boxing three times weekly. (Tr. 264). Treatment notes dated December 6, 2010 indicate that Plaintiff was taking his medications regularly and feeling "okay." (Tr. 263). Plaintiff reported that he was working for his father cleaning out cars and also participating in kick boxing three days weekly. (Tr. 263).

On November 9, 2010, Dr. Orellana completed a questionnaire regarding Plaintiff's functional abilities. (Tr. 239-46). The doctor rated Plaintiff's abilities in 20 categories encompassing understanding and memory, sustained concentration and persistence, social interaction, and adaptation.[4] (Tr. 242-44). The doctor reported that Plaintiff was "markedly limited" in 12 categories and "moderately limited" in eight categories. (Tr. 242-44). The doctor also reported that Plaintiff was "incapable of even low stress" work. (Tr. 245).

On February 24, 2011, Plaintiff reported that things were "going well." (Tr. 261). Treatment notes dated August 10, 2011 indicate that Plaintiff recently went on a three week camping trip. (Tr. 258). Treatment notes dated September 22, 2011 indicate that Plaintiff continued to kick box and lift weights two to three times weekly. (Tr. 257).

---

[4] Dr. Orellana completed the same form, discussed above, that Vicki Smeby completed. Thus, the definitions applicable to the various categories are identical.

On April 15, 2011, Plaintiff completed a report regarding his activities. (Tr. 167-75). Plaintiff reported that he prepares meals daily, mows the lawn, shovels snow, washes dishes, takes out the trash, and shops for food and clothes. (Tr. 170-71). Plaintiff reported that he enjoys reading, watching television, attending church, and participating in kick boxing. (Tr. 172).

On April 17, 2011, Vicki Smeby authored the following note:

> I am writing to update my opinion regarding [Plaintiff's] ability to work. I do not believe that Damian Vasquez could work more than 1-2 days per week for more than 3-4 hour periods. With his current anxiety and mood disorder diagnoses, in addition to his IQ of 80 and history of special education, he is very limited in his ability to sustain any type of consistent employment. Please disregard past psychotherapy notes indicating otherwise. The session notes were made prior to complete IQ testing and evaluation and investigatigation (sic).

(Tr. 248).

On June 30, 2011, Dr. Orelanna reported that Plaintiff's "anger and extreme moodiness [are] manageable" with medication. (Tr. 253). On August 25, 2011, Dr. Orelanna reported that Plaintiff's anger was "under control" and that he was experiencing "no side effects" from his medication. (Tr. 252).

On September 27, 2011, Dr. Orelanna offered the following opinion regarding Plaintiff's impairments and limitations:

> It is in my opinion that, through my examination, Mr. Vasquez is markedly limited in regards to his capacity to sustain activity over a normal workday/workweek on an ongoing basis in a competitive work environment. Mr. Vasquez is moderately limited in regards to his ability to remember locations and work-like procedures, to understand and remember one (1) or two (2) step instructions, to sustain ordinary routine without supervision, to make simple work related decisions, to be aware of normal hazards and take appropriate precautions, to travel to unfamiliar places or use public transportation,

8

> and to set realistic goals or to make plans independently. Mr. Vasquez becomes too apprehensive and self-conscience (sic) and therefore has never held a full time job. He has an estimated IQ that is in the eighties (80s) and is incapable of tolerating even low stress levels.

(Tr. 275).

At the administrative hearing, Plaintiff testified that he was disabled due to "severe anxiety" and "borderline depression." (Tr. 39). Plaintiff also reported that he experienced difficulty being "around others" and understanding instructions. (Tr. 40, 42). Plaintiff reported, however, that he was able to use public transportation to "get around." (Tr. 43-44). Plaintiff also reported that he enjoyed going out in public to roller skate or bowl and regularly participates in kick boxing which helps alleviate his stress and tension. (Tr. 44-45).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[5] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§

---

[5] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffers from: (1) dysthymic disorder; (2) social anxiety disorder with panic features; and (3) generalized anxiety disorder, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 17-19). The ALJ next determined that Plaintiff retained the capacity to perform work at all exertional levels subject to the following non-exertional limitations: (1) he can understand, remember, and carry out simple tasks and follow simple instructions; (2) he is limited to jobs with less than frequent superficial contact with co-workers and the public; and (3) he can respond appropriately to routine changes in the work setting. (Tr. 19). As the ALJ

recognized, Plaintiff has no past relevant work experience, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that there exist a significant number of jobs which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964.

While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert testified that there existed at least 500,000 jobs nationally and 23,900 jobs in the state of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 48-52). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). The ALJ concluded, therefore, that Plaintiff was not entitled to disability benefits.

I.	**The ALJ's Assessment of the Medical Opinions is Supported by Substantial Evidence**

As noted above, Dr. Orellana and Vicki Smeby opined that Plaintiff was impaired to an extent far greater than that recognized by the ALJ. The ALJ, however, afforded "little" weight to these opinions. Plaintiff asserts that he is entitled to relief because the ALJ improperly discounted the opinions from his treating physicians.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

The ALJ discussed in detail the opinions offered by Dr. Orellana and Vicki Smeby, as well as the other evidence of record. (Tr. 17-22). As the ALJ concluded, the opinions in question are not supported by the medical evidence and treatment notes and, moreover, are "contrary to

[Plaintiff's] social activities." (Tr. 17-22). As the ALJ observed, the record reveals that Plaintiff engages in a significant amount of social activities which undermines the opinions in question. (Tr. 17-22). The ALJ also observed that the record reveals that when Plaintiff takes his prescribed medications, his symptomatology is greatly diminished and he is able to function to a far greater degree than recognized by Dr. Orellana or Vicki Smeby. (Tr. 17-22). As the ALJ also observed, certain of the opinions expressed by Dr. Orellana and Vicki Smeby were premised on the mistaken assumption that Plaintiff possessed an IQ of 80. (Tr. 22). As the ALJ noted, however, the most recent testing revealed that Plaintiff possesses an IQ of 90. (Tr. 282). In sum, the ALJ's conclusion to afford less than controlling weight to the opinions in question is supported by substantial evidence.

**II.        The ALJ's Assessment of Plaintiff's Credibility is Supported by Substantial Evidence**

At the administrative hearing, Plaintiff testified that he was impaired to a far greater degree than the ALJ recognized and was, therefore, simply unable to work. The ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment." (Tr. 19-20). Plaintiff asserts that the ALJ improperly discounted his subjective allegations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's

"statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t

is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit recently stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Commissioner of Social Security*, 540 Fed. Appx. 508, 511 (6th Cir., Oct. 4, 2013) (citation omitted).

As the ALJ recognized, the record simply fails to support Plaintiff's subjective allegations. As noted above, Plaintiff's reported activities are inconsistent with his allegations of disability. Likewise, the medical record does not support Plaintiff's allegations, but instead indicates that when Plaintiff takes his prescribed medications, he is able to function to a degree consistent with the ALJ's RFC determination. In sum, the ALJ's decision to accord limited weight to Plaintiff's subjective allegations is supported by substantial evidence.

**III.      The ALJ Properly Relied on the Vocational Expert's Testimony**

As previously noted, in determining that there existed a significant number of jobs which Plaintiff could perform despite his impairments, the ALJ relied upon the testimony of a vocational expert. Plaintiff asserts that he is entitled to relief because the vocational expert's testimony was "flawed." Specifically, Plaintiff asserts that the hypothetical question to which he responded did not accurately describe Plaintiff's limitations.

While the ALJ may satisfy her burden through the use of hypothetical questions posed to a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996). The hypothetical question which the ALJ posed to the vocational expert simply asked whether there existed jobs which an individual could perform consistent with Plaintiff's RFC, to which the vocational expert indicated that there existed approximately 23,900 such jobs in the state of Michigan. The ALJ's RFC determination is supported by substantial evidence and there was nothing improper or incomplete about the hypothetical questions the ALJ posed to the vocational expert. The Court concludes, therefore, that the ALJ properly relied upon the vocational expert's testimony.

**IV.      Plaintiff has Waived any Argument Regarding Sentence Six Remand**

Finally, as part of his request to obtain review of the ALJ's decision, Plaintiff submitted to the Appeals Council additional evidence which was not presented to the ALJ. (Tr. 1-6, 285-89). The Appeals Council received the evidence into the record and considered it before declining to review the ALJ's determination. This Court, however, is precluded from considering such material. In *Cline v. Commissioner of Social Security*, 96 F.3d 146 (6th Cir. 1996), the Sixth

Circuit indicated that where the Appeals Council considers new evidence that was not before the ALJ, but nonetheless declines to review the ALJ's determination, the district court cannot consider such evidence when adjudicating the claimant's appeal of the ALJ's determination. *Id.* at 148; *see also*, *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007) (quoting *Cline*, 96 F.3d at 148).

If Plaintiff can demonstrate, however, that this evidence is new and material, and that good cause existed for not presenting it in the prior proceeding, the Court can remand the case for further proceedings during which this new evidence can be considered. *Cline*, 96 F.3d at 148. To satisfy the materiality requirement, Plaintiff must show that there exists a reasonable probability that the Commissioner would have reached a different result if presented with the new evidence. *Sizemore v. Secretary of Health and Human Serv's*, 865 F.2d 709, 711 (6th Cir. 1988). Plaintiff bears the burden of making these showings. *See Hollon ex rel. Hollon v. Commissioner of Social Security*, 447 F.3d 477, 483 (6th Cir. 2006).

Plaintiff has not requested that the Court remand this matter for consideration of this evidence. Plaintiff has, therefore, waived any such argument. *See, e.g., Porzillo v. Department of Health and Human Services*, 369 Fed. Appx. 123, 132 (Fed. Cir., Mar. 12, 2010) (claimant "waves any arguments that are not developed"); *Shaw v. AAA Engineering & Drafting, Inc.*, 213 F.3d 519, 537 n.25 (10th Cir. 2000) (arguments "superficially" developed are waived); *Financial Resources Network, Inc. v. Brown & Brown, Inc.*, 2010 WL 4806902 at *30 n.29 (D. Mass., Nov. 18, 2010) (same).

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: May 14, 2014

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge